## APPEAL OF THE COMMONWEALTH.

[ESTATE OF WILLIAM FAGELY, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT FOR NORTHUMBERLAND COUNTY.

Argued May 27, 1889—Decided October 7, 1889.
[To be reported.]

1. The act of May 6, 1887, P. L. 79, to provide for the better collection of collateral inheritance taxes, a re-enactment of the substance of previous acts upon the subject, does not repeal the provision of the act of May 4, 1855, P. L. 425, imposing the charge of six per cent per annum in cases where the twelve per cent charge is not to be enforced.

2. Where there has been such unavoidable cause of delay in the settlement of an estate as to relieve from the twelve per cent per annum charge, imposed by § 1, act of April 10, 1849, P. L. 572, there is to be imposed under § 1, act of May 4, 1855, P. L. 425, the six per cent per annum charge from one year after the decedent's death.

3. The voluntary payment by a legatee of the tax upon a bequest, after and in compliance with a decree of the Orphans' Court fixing the amount thereof, will not bar the right of the commonwealth afterwards to appeal from the decree for error in not requiring payment of the six per cent charge in addition.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WIL-
LIAMS, JJ.

No. 11 July Term 1888, Sup. Ct.; court below, No. 43 Sep-
tember Term 1883, O. C.

William Fagely died at Shamokin, Pa., on February 17, 1874,
leaving to survive him neither father, mother, widow, nor chil-
dren. By his last will, dated December 9, 1865, duly admitted
to probate, he bequeathed his entire estate to trustees, in trust
to pay the one half of the net income to his brother Reuben
Fagely, during his life, and the other half to his sisters Hannah
Fagely and Elizabeth Martz, and a niece, Catharine Martz, or
the survivor of them, and from and after the death of Reuben
Fagely, to pay the whole income to Hannah Fagely, Elizabeth
Martz and Catharine Martz, during their lives or the life of the
survivor of them, with remainder over under the intestate laws.

William and Reuben Fagely in 1857 had formed a partner-
ship in the coal business with John Haas, under the firm name of
John Haas & Co., and at the time of William Fagely's death,
his estate consisted almost entirely of his undivided interest in
said copartnership.

On March 2, 1874, letters testamentary upon the will of Will-
iam Fagely were granted to Reuben Fagely. On May 1, 1878,
Samuel Heckert was appointed by the register of the county col-
lateral inheritance appraiser of the estate, but no appraisement
of any kind was made during the lifetime of Reuben Fage-
ly, who died on February 21, 1880. Letters of administration
d. b. n. c. t. a. on the estate of William Fagely, were granted to
C. Q. McWilliams on February 21, 1880. On April 2, 1880, C.
M. Clement was appointed collateral appraiser of the estate of
Reuben Fagely, deceased, and thereafter the two appraisers acted
together in all matters relating to their appointment, although
separate appraisements were made by them for each estate. It
appeared that after the death of William Fagely the business
of the firm of John Haas & Co. had been carried on as before,
and during the lifetime of Robert Fagely the income payable
by the will to the beneficiaries was allowed to remain in the firm
and was thus added to the corpus of the estate.

Heckert and Clement, the collateral inheritance appraisers
of the two estates, first met on March 27, 1882, and on August 6,

1883, they filed an elaborate and detailed inventory and appraisement, fixing the corpus of the estate of William Fagely, for the assessment of collateral inheritance tax, at $136,216.48; the life estate of Reuben Fagely at $17,457; the life estate of Elizabeth Martz, Hannah Fagely and Catharine Martz in the estate of William Fagely, to Reuben's death, at $17,457; the life estate of the same persons in the joint estates of William and Reuben Fagely, from Reuben's death to the date of the appraisement, at $34,379; and the life estate of the same persons for their expectancies, less an abatement of $1,000, at $68,871.

This appraisement was largely a joint one of the two estates of William and Reuben Fagely, and failed to so separate them that an assessment of the tax due by each estate could readily be made. No exceptions, however, to this appraisement were filed, but a general appeal was taken by the legatees and devisees of both estates, which came before the Orphans' Court for hearing on July 9, 1885, when, it appearing that certain matters of fact, which could not be raised by the appeal, were in dispute, the court appointed the two appraisers as commissioners to take testimony and report a valuation of both estates, as well as of the life estates and expectancies in question.

The commissioners thus appointed met on August 3, 1885, and on various days afterwards, took a large amount of testimony, and filed their report on December 23, 1885, reducing the valuation of the corpus of William Fagely's estate, subject to collateral inheritance tax, to $107,612.57, and the several life estates referred to, in a corresponding ratio, and taxing each at five per cent, the tax upon the corpus of the estate $107,612.57, being $5,380.63; upon the life estate of Reuben Fagely $22,055.20, being $1,102.75; upon the life estate of Catharine Martz and Hannah Fagely, (Elizabeth Martz having died), $22,055.20, being $1,102.75; upon the life estate of Catharine Martz and Hannah Fagely, in remainder upon the death of Reuben Fagely, $6,099.63, being $304.58.

To this report both sides filed exceptions. Pending these exceptions it was verbally agreed between counsel, that, waiving all irregularities, the report of the commissioners should be taken as fixing the values of the estate, as well as of the life estates and expectancies, and the principal of the tax due, and

that the case should be argued on the question of interest alone. On the strength of this agreement all exceptions were treated as withdrawn, except the commonwealth's sixth exception, appearing hereafter, which related to that question alone.

The argument on the said exception was heard on April 11, 1887, and on April 22, 1887, the court, ROCKEFELLER, P. J., filed the following opinion:

This case was heard on April 11, 1887, and the same day the exceptions to the valuation of the appraisers as per their last report, filed December 23, 1885, were withdrawn so far as they relate to the valuation, and the report is confirmed as to such valuation.

The sixth exception filed by the commonwealth was not withdrawn, and is as follows:

" Because the said appraisers did not specifically find and report that the said estates were liable to a penalty of twelve per cent interest per annum, from the death of the respective decedents, and did not specifically find and report the time when the same should begin to run." [1]

The question raised by this exception is the only question in the case.

In the case of the Commonwealth's App., 34 Pa. 204, it was held that "it is the duty of executors, where a part of the estate cannot be settled up within the year, to estimate the amount thus suspended, and pay the collateral inheritance tax on the balance; otherwise, they are chargeable with interest thereon at the rate of 12 per cent per annum." In the present case, however, the evidence shows that the estate was very much complicated; most of it consisted of partnership property and the settlements of the affairs of William and Reuben Fagely and of John Haas & Co. were involved, which occupied several years; and it seems it was impossible to ascertain the amount of the principal, or make an estimate until such settlements could be made. In the supplemental report of the appraisers, filed January 4, 1886, they say, " they have been requested and respectfully do call the attention of the court to the testimony taken by the appellants for the purpose of showing that it was not possible to have had the estate of William Fagely appraised for collateral inheritance tax purposes, at an

earlier date than was done, without manifest injury thereto; and to the evidence taken by appellants to show that neither Reuben Fagely, Catharine Martz or Hannah Fagely, during the life of Reuben Fagely, received from John Haas & Co. any revenue or income upon the interest of William Fagely therein, but that the same remained in and swelled the corpus of said estate." Under such facts and circumstances I have come to the conclusion that it would be wrong to compel payment of any penalty. It would seem that it was almost impossible, and perhaps unsafe, for the executors to undertake to make an estimate. They allege, and from their known integrity and honesty, I have no doubt of it, that they have all along had the money in bank ready to be paid over at any time when the amount could be ascertained. The fact that when the appraisers re-examined the matter and came to make their last report, they reduced the value of the estate nearly $30,000, is evidence of the difficulty in ascertaining the amount of the estate at an earlier period. The sixth exception is, therefore, dismissed.

The court entered a decree, in substance, that the collateral inheritance tax due and payable to the commonwealth by the executors of Reuben Fagely, deceased, upon his life estate in the estate of William Fagely, deceased, was found to be the sum of $1,102.75; the amount of such tax due and payable to the commonwealth by Catharine Martz and Hannah Fagely, and the survivor of them, upon their life estates in the estate of William Fagely, deceased, in possession at the time of his death, was found to be the sum of $1,102.75; and the amount of such tax due and payable to the commonwealth by Catharine Martz and Hannah Fagely, and the survivor of them, upon their life estates in the estate of William Fagely, at his death expectant in remainder upon the estate of Reuben Fagely, deceased, was found to be the sum of $304.58;—the decree concluding as follows: " Value of the whole estate of William Fagely, deceased (as ascertained to have been at the time of his death), $107,612.57; and the amount of collateral inheritance tax due and payable to the commonwealth upon the estate of said William Fagely, deceased, by the person or persons entitled to the same in remainder, under the will of said William Fagely, deceased, immediately upon the death of Catharine Martz and Hannah

Fagely, and the survivor of them, is found to be the sum of $2,870.54."

On June 14, 1887, the executor of Reuben Fagely deceased paid to the register, in the presence and with the approval of the counsel for the commonwealth, the sum of $1,102.75, for collateral inheritance tax due on the life estate of Reuben Fagely, deceased; Catharine Martz paid $1,102.75, for the same tax due on the life estate of Catharine Martz and Hannah Fagely, and the survivor of them; and at the same time Catharine Martz paid $304.58 for the same tax " due the commonwealth on the life estate of Catharine Martz and Hannah Fagely in the estate of William Fagely, deceased, expectant in remainder, as fixed by the decree of court filed in this case."

On January 2, 1888, upon the motion of the counsel for the commonwealth, filed September 27, 1887, the portion of the decree of April 22, 1887, quoted above, was amended by the insertion of the words, " with interest at six per cent per annum until paid," so as to read as follows : " Value of the whole estate of William Fagely, deceased (as ascertained to have been at the time of his death), $107,612.57, and the amount of collateral inheritance tax due and payable to the commonwealth upon the estate of the said William Fagely, deceased, with interest at six per cent per annum until paid, by the person or persons entitled to the same in remainder under the will of said William Fagely, deceased, immediately upon the death of Catharine Martz and Hannah Fagely, and the survivor of them, is found to be the sum of $2,870.54."

Thereupon, on April 3, 1888, the commonwealth took this appeal, specifying that the court erred :

1. In dismissing the commonwealth's sixth exception.[1]

2. In refusing to allow interest upon the tax charged upon the life estates of Reuben Fagely, Catharine Martz and Hannah Fagely, and the survivor of them.

3. In not allowing interest thereon at the rate of six per cent per annum, at least from the end of one year after the death of William Fagely, deceased.

4. In reducing the amount of tax charged upon the remainder, from $5,380.62, to $2,870.54.

5. And, having so reduced the tax on the remainder, in not allowing interest from the death of William Fagely.

In the Supreme Court, the life tenants filed a motion to quash, and also special pleas setting out the payment by them severally, on June 14, 1887, of the sums due from them for taxes to the commonwealth, as determined by the decree of the court, said payments having been made in satisfaction of the said decree; whereby the commonwealth was estopped from making any other claim or demand for or on account of the collateral inheritance tax on said estate. The motion to quash and the special pleas were supported by testimony taken.

*Mr. Robert Snodgrass*, for the appellant:

1. Under the act of April 10, 1849, § 14, P. L. 572, and the act of May 4, 1855, § 1, P. L. 425, there are two absolutely binding rules to be observed in ascertaining the interest to be charged upon delinquent collateral inheritance tax: (*a*) If some "unavoidable cause of delay" be not affirmatively shown, interest at the rate of twelve per cent per annum must be charged "from the time of the decedent's death." (*b*) If some "unavoidable cause of delay" be shown, then the interest is to be reduced to six per cent during such delay, to be computed "from the end of the year" after decedent's death, but as soon as the cause of delay ceases to exist, interest at the rate of twelve per cent immediately attaches, and continues until the tax is actually paid. In either case interest is absolutely chargeable at the rate fixed by the statute. The principle upon which the legislation from which these rules are deduced, is, that whether there be good cause for delay or not, the estate in question is possessed of money which belongs to the commonwealth, and must, like every other debtor, pay interest so long as such money is withheld: Commonwealth's App., 34 Pa. 204; Commonwealth v. Smith, 20 Pa. 100; Reish v. Commonwealth, 106 Pa. 521.

2. Under said acts it has been expressly held by this court, that the collateral inheritance tax "on estates in remainder accrues immediately upon the decease of the person from whom the remaindermen derive title; that they are to be then appraised, and after deducting the value of the life estate, the tax on the remainder is immediately payable to the register, and if not paid within one year after decedent's death, interest at the rate of twelve per cent per annum from the date

of his decease shall be paid:" Mellon's App., 114 Pa. 570. Moreover, in the present case, the commissioners fixed the tax ·on the remainder at $5,380.63, being five per cent on the appraised value of the whole estate, finding at the same time that the "corpus of the estate has not been and will not be diminished by reason of the life estates created therein." There ·has been no election in this case to pay said tax in anticipation, and the court had no power to reduce the amount as found by the commissioners.

3. The appellees now attempt to set up an estoppel as against the commonwealth, forgetting that, even if it would so operate as between individuals, which is doubtful, it cannot avail in this case, upon the well settled principle that estoppels do not operate against the sovereign. But even if this were not so, the commonwealth claims the right to litigate the question of interest under the agreement relative to valuations, as indicated in the opinion and decree of the court below. If no interest is found to be chargeable, the appellees are not injured by the appeal; but if interest should have been paid under the statute, there is no good reason why they should escape upon this motion, which is a substantial repudiation of the agreement under which the litigation was to be limited to the question of interest.

*Mr. J. B. Packer* (with him *Mr. S. P. Wolverton*), for the appellees:

1. When the object is to bar a writ of error by matters of fact which do not appear on the record returned, they should be brought to the view of the court, either by plea or by a motion to quash the writ: Showers v. Showers, 27 Pa. 485; and the appellant having recovered a judgment and received the amount of it from the appellees, will not be permitted to reverse the judgment: Laughlin v. Peebles, 1 P. & W. 114; Martin v. Ives, 17 S. & R. 364; Baily v. Baily, 44 Pa. 274; Herman on Estoppel, § 599; Smith v. Jack, 2 W. & S. 101; Ullery v. Clark, 18 Pa. 148; Sutton's App., 112 Pa. 598; Martens's App., 13 W. N. 289; Bigelow on Estoppel, 588; Smith v. Hood, 25 Pa. 218. The doctrine of estoppel applies to the commonwealth, which "is as much subject to rules of equity and justice as her citizens:" Commonwealth v. Freedley, 21

Pa. 37; Commonwealth v. Smith, 2 Clark 335; Commonwealth v. Andre Heirs, 3 Pick. 224; Herman on Estoppel, § 276; Commonwealth v. Pejepscut Proprietors, 10 Mass. 154; Carver v. Jackson, 4 Pet. 86; United States v. Bank of the Metropolis, 15 Pet. 377; Cooke v. United States, 1 Otto 398; Chicago v. Sexton, 115 Ill. 230; Cook v. Harmer, 108 Ill. 151.

2. The only question before the court below, and the only question upon the record here, is that raised by the commonwealth's sixth exception, whether the estate was liable to the penalty of twelve per cent. It is contended here, as it was there, that owing to "unavoidable cause of delay," the tax could not be ascertained and paid sooner than it was, and the learned judge having found the facts from the evidence reported by the commissioners, his findings will not be disturbed unless clear error is shown. And even if that portion of the decree in relation to the tax payable by the remaindermen had not been amended in conformity with the request of the commonwealth, as it was, and if the question were properly raised upon the record here, as it is not, the court was right in fixing the amount payable by the remaindermen at $2,870.54, instead of $5,380.62, as now claimed by the commonwealth. The aggregate amount of the taxes, as fixed by the decree of the court, was $5,380.62, or five per cent upon the whole valuation. The tax must not be over five per cent of the entire estate: King's Est., 11 Phila. 26.

3. The twelve per cent per annum when payable, is payable as a penalty. The act of May 6, 1887, P. L. 79, is retrospective in its character, and that it embraces all cases not finally disposed of, is evident from its very terms. In its third section it provides that "in all cases where there *has been* or shall be a devise," etc. Its twentieth section repeals all laws inconsistent with its provisions. When an act giving the commonwealth the power of collecting taxes, together with penalties for non-payment, etc., is repealed, reserving to the commonwealth the right to collect all taxes accrued, the penalties cannot be recovered upon suits afterwards instituted to collect the taxes: Commonwealth v. Standard Oil Co., 101 Pa. 150; Easton Bank v. Commonwealth, 10 Pa. 451; Stoever v. Immell, 1 W. 258; North Canal St. Road, 10 W. 351; United States v. Tynen, 11 Wall. 88; Pana v. Bowler, 107 U. S. 529; South Carolina v. Gaillard, 101 U. S. 438.

OPINION, MR. JUSTICE GREEN :

An examination of the testimony taken in this case satisfies us that the learned court below was right in holding that there was unavoidable cause of delay in the settlement of the estate of the decedent. The reasons for this finding are sufficiently set forth in the opinion of the court, and need not be repeated here. It follows that there was no error in refusing to apply the twelve per cent penalty for delay in the payment. But the law which relieves from the payment of this penalty also requires that six per cent per annum shall be charged upon the collateral inheritance tax, from the end of one year after the death of the decedent, in case the estate is not subject to the twelve per cent penalty. That being so, it follows that the learned court below was in error in not directing the six per cent annual charge to be imposed, and to that extent, but to that extent only, the decree of the Orphans' Court must be reversed. The provisions of the act of 1887 are scarcely more than a re-enactment of the substance of the previous laws relating to the collateral inheritance tax into one harmonious and consolidated law. So far as the substitution of the six per cent annual charge for the twelve per cent penalty is concerned, there is no inconsistency between the act of 1855, in which this provision was originally contained, and the act of 1887, which merely repeats it. Hence it does not follow that the act of 1855, which was in force when this proceeding was commenced, was repealed by the act of 1887.

We do not think that the commonwealth's right to the present appeal was taken away by the fact of the payment to the register of wills of the amount of tax as fixed by the decree of the court. When the other exceptions filed by the commonwealth were withdrawn, the sixth exception, which raised the question of interest was reserved, and there was no agreement by either party that the decision of the court on that exception should be final. When the money was paid to the register there was no agreement by any one that there should be no appeal by the commonwealth, nor was such a condition annexed to the payment by the parties who paid the money. While they, having voluntarily paid the money, could scarcely have been heard on appeal, we can see no good reason for holding the commonwealth estopped, simply because the

parties, indebted in any event to the extent of their actual payment, chose to make that payment. It was a payment in their own ease, because it stopped the further running of a burdensome charge ; and, as it was unaccompanied by any condition, and not induced by any promise on the part of the commonwealth, there are no circumstances of estoppel present. The register's receipt is simply for the amount of money fixed by the court, and does not express the idea that the money was received in satisfaction, discharge, or payment of the decree, or of the amount of tax claimed by the commonwealth. The second, third, and fifth assignments of error are sustained, and the remaining assignments are dismissed.

> The decree of the court below is reversed and record remitted, with direction to amend the decree in accordance with this opinion, the costs of this appeal to be paid by the appellees.